## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                       )
ARCO INGENIEROS, S.A. de C.V.,         )
                                       )
                    Plaintiff,         )
                                       )          Civil Action
          v.                           )          No. 18-12348-PBS
                                       )
CDM INTERNATIONAL INC.,                )
                                       )
                    Defendant.         )
_____)


### MEMORANDUM AND ORDER

March 22, 2019

Saris, C.J.

### INTRODUCTION

Plaintiff Arco Ingenieros, S.A. de C.V. ("ARCO") brings this action against Defendant CDM International Inc. ("CDM International") in connection with construction projects sponsored by the United States Agency for International Development ("USAID") to rebuild schools and a health clinic in El Salvador after Tropical Storm Ida. Pursuant to separate contracts with USAID, CDM International assessed the sites and created preliminary designs for the projects, while ARCO used those preliminary designs to prepare final designs and then reconstruct the buildings. ARCO alleges that the site assessments and preliminary designs CDM International produced

1

were defective and did not fulfill the company's obligations under its contract with USAID, causing ARCO to incur significant costs to complete its own contractual obligations to USAID. One of the seven claims ARCO brings against CDM International is for breach of contract (Count I). ARCO alleges it is a third-party beneficiary of CDM International's promise to USAID to conduct adequate site assessments and prepare preliminary designs for the school and clinic projects. CDM International has moved to dismiss Count I under Federal Rule of Civil Procedure 12(b)(6).

After hearing, the Court **ALLOWS** CDM International's motion to dismiss (Docket No. 14).

**FACTUAL BACKGROUND**

The following factual background comes from the complaint and must be taken as true at this stage. See Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014).

## I. Parties

ARCO is a Salvadoran corporation that operates out of San Salvador, El Salvador. Founded in 1950, it is the oldest and one of the largest construction companies currently operating in El Salvador. It has completed major design and construction projections for the U.S. military and public and private entities in El Salvador.

CDM International is a Massachusetts corporation operating out of Boston, Massachusetts. On September 29, 2008, CDM

International entered into a master contract with USAID to serve
as the architect and engineering firm ("A/E") for USAID projects
worldwide.

## II.  Ida Reconstruction Project

In November 2009, Tropical Storm Ida hit El Salvador,
causing flooding, landslides, and the destruction of homes,
roads, bridges, schools, health clinics, and other
infrastructure. USAID provided $25 million in funding to rebuild
damaged infrastructure.

On December 8, 2011, CDM International entered into Task
Order No. AID-519-TO-12-00001 with USAID ("CDM Task Order"),
which specified its duties as the A/E for these reconstruction
projects. It required CDM International to conduct studies and
assessments of each project site and create preliminary designs
and technical specifications. These preliminary designs had to
constitute at least thirty percent of the final designs for each
facility. The CDM Task Order also required CDM International to
participate in the procurement process for design-build
contractors, who would use the preliminary designs to create
final designs and then actually reconstruct the facilities.
Finally, CDM International had to supervise the work of the
design-build contractors. Between 2011 and 2014, CDM
International made numerous statements in public documents that
it was completing preliminary designs of at least thirty percent

3

of the final designs to assist the design-build contractors in making bids.

In late 2013 and early 2014, USAID issued requests for proposals from design-build contractors for eight schools and one health clinic. In its solicitation documents, USAID explained that the final designs had to be based on CDM International's preliminary designs. ARCO only bid for these projects after USAID encouraged it to do so. In submitting its bids, ARCO relied on the preliminary designs and on representations by USAID and CDM International that these designs constituted at least thirty percent of the final designs for each project. USAID accepted both of ARCO's bids, and USAID and ARCO entered into contracts in late 2014 for the projects. Both contracts included CDM International's preliminary designs and repeated the promise that they constituted at least thirty percent of the final designs.

## III. <u>Construction Problems and Delays</u>

After starting work on the projects, ARCO realized that CDM International's preliminary designs contained numerous defects and constituted substantially less than thirty percent of the final designs. For example, the designs for the schools failed to follow building-code requirements and did not account for soil-condition and subsurface issues. The designs for the health clinic failed to address flooding requirements, lacked a plan

for bio-infectious waste disposal, and did not identify that the annex to the clinic was structurally unsound. Because of these errors, ARCO spent significant time and resources redrawing the designs; obtaining new permits; conducting additional excavation, soil compaction, and hydrogeological studies; and demolishing more structures than planned.

ARCO also alleges that CDM International and USAID interfered with its work in other ways. USAID and CDM International delayed in responding to its concerns about the preliminary designs. CDM International failed to approve technical documents in a timely manner and maintain a proper document control system, used outdated technical specifications, utilized its supervisory role to prevent ARCO from executing its final designs, and caused numerous other delays. ARCO alleges that CDM International and USAID conspired to hide the problems with the preliminary designs and shifted blame to ARCO. Finally, ARCO contends that they avoided paying it for its work by determining that it had not substantially completed the projects.

Because of these delays, USAID has withheld progress payments to ARCO and assessed liquidated damages. ARCO has also incurred additional costs due to these delays. In total, ARCO has not received almost $9 million it believes USAID owes for its work.

IV.  **Procedural History**

ARCO filed suit against CDM International on November 9, 2018. Invoking this Court's diversity jurisdiction, ARCO asserts seven causes of action: breach of contract, tortious inference with contractual relations, intentional misrepresentation, negligent misrepresentation, civil conspiracy (concerted action), civil conspiracy (coercion), and unjust enrichment. In its breach of contract claim (Count I), ARCO alleges that it is an intended beneficiary of the CDM Task Order with USAID and suffered damages due to CDM International's deficient preliminary designs. On December 18, 2018, CDM International moved to dismiss only the breach of contract claim (Count I) pursuant to Federal Rule of Civil Procedure 12(b)(6).

LEGAL STANDARDS

I.  **Standard of Review**

In analyzing whether a complaint states a claim sufficient to satisfy Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must set aside any statements that are merely conclusory and examine only the pleader's factual allegations. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads

6

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678.

In addition to the complaint, courts may also consider "documents central to the plaintiff's claim" and "documents sufficiently referred to in the complaint" on a motion to dismiss. Newman v. Lehman Bros. Holdings Inc., 901 F.3d 19, 25 (1st Cir. 2018) (quoting Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013)). CDM International asks the Court to consider the CDM Task Order in evaluating whether ARCO states a claim for breach of contract. Although ARCO did not attach the CDM Task Order to the complaint, the Court may rely on its contents because the complaint refers repeatedly to it and it is central to ARCO's breach of contract claim.

## II. **Third-Party Beneficiary**

Massachusetts courts have adopted the Restatement (Second) of Contracts approach for determining whether a third party may recover on a contract. Miller v. Mooney, 725 N.E.2d 545, 549-50 (Mass. 2000).[1] Under this approach, not all third parties who derive a benefit from a contract can sue to enforce that contract. See Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club,

---

[1]     The Court assumes without deciding that Massachusetts law applies to the third-party beneficiary issue, as both parties cite to Massachusetts law in their briefing.

Inc., 918 N.E.2d 36, 42 (Mass. 2009). Instead, Massachusetts
courts distinguish between intended and incidental
beneficiaries. See Miller, 725 N.E.2d at 550. A third party
qualifies as an intended beneficiary only if "the 'language and
circumstances of the contract' show that the parties to the
contract 'clear[ly] and definite[ly]' intended the beneficiary
to benefit from the promised performance." Cumis Ins. Soc'y, 918
N.E.2d at 44 (alterations in original) (quoting Anderson v. Fox
Hill Vill. Homeowners Corp., 676 N.E.2d 821, 822 (Mass. 1997)).
Only an intended beneficiary can sue to enforce a contract. See
Miller, 725 N.E.2d at 549-50. If no intent to benefit the
plaintiff is clear, "the plaintiff is no more than an incidental
beneficiary and cannot recover." Anderson, 676 N.E.2d at 823.
Accordingly, "[t]he intent of the contracting parties is the
central inquiry in determining whether a nonparty may maintain
an action as a third-party beneficiary." Markle v. HSBC Mortg.
Corp. (USA), 844 F. Supp. 2d 172, 181 (D. Mass. 2011).

Courts begin the third-party beneficiary analysis by
consulting the language of the contract. See id. If the
contracting parties' intent is clear from that language, that
intent controls. Id. A third party is not precluded from being
an intended beneficiary simply because it is not specifically
named in the contract. Id. Nor must the intended beneficiary be
identified at the time the contract is entered into. Flattery v.

Gregory, 489 N.E.2d 1257, 1261 (Mass. 1986). If the contract language does not clearly evince the contracting parties' intent, courts consult extrinsic evidence about the circumstances surrounding the contract. See Alicea v. Machete Music, 744 F.3d 773, 786 (1st Cir. 2014).

## DISCUSSION

ARCO first argues that it is improper for the Court to dispose of a third-party beneficiary claim on a motion to dismiss and that the Court must accept its allegation that USAID and CDM International entered into the CDM Task Order to benefit it. Under the Iqbal standard, such a conclusory allegation alone does not surpass the hurdle of a motion to dismiss. See Bos. Exec. Helicopters, LLC v. Maguire, 196 F. Supp. 3d 134, 142 (D. Mass. 2016) (dismissing a third-party beneficiary claim where the complaint contained only a "bald and unsupported assertion" that the plaintiff was a third-party beneficiary of the contract).

The language of the CDM Task Order does not indicate that USAID and CDM International intended to benefit the design-build contractor for the school and clinic projects. The express purpose of the CDM Task Order is for CDM International to "provide professional architecture and engineering (A/E) services for the technical tasks associated with USAID's Tropical Storm Ida Reconstruction Project." Dkt. No. 15-2 ¶ B.1.

Nothing in this language suggests that the parties intended any benefit to ARCO. The CDM Task Order requires CDM International to conduct studies and assessments, create preliminary designs for the schools and clinics, assist with the bidding process for design-builder contractors, and then supervise the chosen design-build contractors. All of these tasks serve to benefit USAID and its reconstruction project. Although ARCO incidentally benefited from the studies and preliminary designs, there is no indication USAID and CDM International entered into this agreement with this benefit in mind. The lack of intent to benefit ARCO is even clearer in light of CDM International's supervisory role over the design-build contractor, as USAID entered into the CDM Task Order at least in part to oversee the contractor's performance. See Valley Landscape Co. v. Rolland, 237 S.E.2d 120, 123 (Va. 1977).

Even if the language of the CDM Task Order were ambiguous about the parties' intent, none of the facts alleged in the complaint plausibly supports an inference that it was meant to benefit ARCO. ARCO relies on statements by USAID and CDM International that CDM International would complete preliminary designs that the design-build contractors would use to bid and complete the reconstruction. These statements indicate that the parties intended for the design-build contractor to use CDM International's preliminary designs. They do not, however, show

that the purpose of the CDM Task Order was to benefit the design-build contractor rather than help USAID in its reconstruction efforts.

The caselaw on point from other jurisdictions does not support third-party beneficiary status in the construction context without a clear indication of intent. This is because significant construction projects generally involve multiple contracts that are "inevitably intertwined" to ensure the project is completed in a timely manner according to the agreed-upon specifications. E.C. Ernst, Inc. v. Manhattan Constr. Co. of Tex., 551 F.2d 1026, 1030 (5th Cir. 1977). "[T]his interrelationship by itself does not justify imposing third-party beneficiary duties, which flow not from the inevitable consequences of a breach but rather from the intent of the contracting parties." Id. Unless a construction contract manifests a contrary intent, it will not create enforcement rights in a third party that separately contracts with the project owner. See Port Chester Elec. Constr. Corp. v. Atlas, 357 N.E.2d 983, 986 (N.Y. 1976).

In similar situations, courts have rejected third-party beneficiary claims made by contractors against architects or engineers who separately contracted with the project owner. See, e.g., Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of N.Y., 734 F. Supp. 2d 368, 376-77 (S.D.N.Y. 2010) (holding that

11

a prime contractor was not an intended beneficiary of the contract between the architect and construction manager even though the architect was required to coordinate and produce the bidding documents which may have been relied on by the contractor in submitting its bids); RPR & Assocs. v. O'Brien/Atkins Assocs., P.A., 24 F. Supp. 2d 515, 518, 520-21 (M.D.N.C. 1998) (rejecting a prime contractor's third-party beneficiary claim against an architect where the contract between the architect and the project owner indicated no intent to benefit the prime contractor); SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc., 28 P.3d 669, 685 (Utah 2001) (denying a third-party beneficiary claim in the construction context where the contract was not "undertaken for the plaintiff's direct benefit" even though "the parties to the contract kn[ew] . . . that others will benefit" (quoting Am. Towers Owners Ass'n v. CCI Mechanical, Inc., 930 P.2d 1182, 1188 (Utah 1996))); Valley Landscape Co., 237 S.E.2d at 123 ("The fact that a contractor will benefit and profit from plans that are carefully and professionally drawn, and from specifications that are clear and precise, is an incidental benefit that accrues to the contractor. But it is not the benefit that is primarily envisioned by the architect and the owner.").[2]

---

[2]    Two Massachusetts Superior Court decisions have reached the same conclusion. See Tasco Constr. Inc. v. Town of Winchendon,

In some circumstances, courts have found a contractor to be
an intended beneficiary of a construction contract when the
contract contains a provision indicating that the signatory to
the contract was not to interfere with the contractor's work or
accepted liability to it for damage or delay. See, e.g., M. T.
Reed Constr. Co. v. Va. Metal Prods. Corp., 213 F.2d 337, 339
(5th Cir. 1954); KEC Corp. v. N.Y. State Env't Facilities Corp.,
350 N.Y.S.2d 331, 335-36 (N.Y. Sup. Ct. 1973). While the CDM
Task Order contemplates that CDM International will work with
the design-build contractor, it includes no provision indicating
that the parties intended to impose liability on CDM
International to ARCO for shoddy preliminary designs and delays.

ARCO relies on Chestnut Hill Development Corp. v. Otis
Elevator Co., 653 F. Supp. 927 (D. Mass. 1987), to support its
argument that it is an intended beneficiary of the CDM Task
Order. But the court in Chestnut Hill addressed a claim by the
owner-developer of a construction project that it was a third-
party beneficiary of a contract between its contractor and a

No. 910308C, 1994 WL 879613, at *2 (Mass. Sup. Ct. Feb. 11,
1994) (denying third-party beneficiary status even though the
plaintiff contractor relied on the defendant engineer's work for
the project owner); Everett J. Prescott, Inc. v. Nat'l Grange
Ins. Co., No. 923047, 1993 WL 818680, at *2 (Mass. Super. Ct.
Dec. 1, 1993) (rejecting a general contractor's third-party
beneficiary claim against an engineer even though "it was
foreseeable that . . . the general contractor would also derive
economic benefit from" the engineer's contract with the project
owner).

13

subcontractor. <u>Id.</u> at 930. The court held that there were fact issues as to whether the parties intended the owner-developer to be a third-party beneficiary, pointing out that the owner-developer picked the subcontractor, met with its employees and ordered the general contractor to hire it. <u>Id.</u> at 930-31. Here, ARCO is not the owner and has presented no allegations that support a reasonable inference that either USAID or CDM intended it to "benefit" from the contract, as opposed to simply rely on it. <u>Chestnut Hill</u> therefore does little to help ARCO's case.

## ORDER

CDM International's motion to dismiss the breach of contract claim in Count I of the complaint (Docket No. 14) is **<u>ALLOWED</u>**.

SO ORDERED.


/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge